# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NASHON CASARES,

    Plaintiff,                         Case No.

v.                                     Hon.

MERCURY BROADBAND, LLC,

    Defendant.

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Brendan@hurwitzlaw.com

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Nashon Casares ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC, and hereby states the following:

## INTRODUCTION

1. This is a civil action for money damages, liquidated damages, costs, attorneys' fees, and other relief against Defendant Mercury Broadband, LLC.

2. Plaintiff asserts claims of interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. and disability

discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act of 1976 ("PWDCRA"), Mich. Comp. Laws § 37.1101 *et seq*.

## JURISDICTION AND PARTIES

3. Plaintiff is an individual residing in Ann Arbor, Washtenaw County, Michigan.

4. Defendant is a domestic for-profit corporation with a principal place of business in the City of Mission, County of Johson, State of Kansas.

5. Plaintiff's claims arise from Defendant's violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*, the Americans with Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12102(1), and Michigan's Persons with Disabilities Civil Rights Act of 1976 ("PWDCRA"), Mich. Comp. Laws § 37.1101 *et seq*.

6. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7. This Court also has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned was, a corporation with its principal place of business in the State of Kansas and Plaintiff is now, and at all times mentioned was, a citizen domiciled in the United States in the State of

Michigan. Moreover, the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b), as it is the district in which a substantial part of the events giving rise to Plaintiff's claims occurred.

10. Plaintiff timely filed an EEOC Charge of Discrimination and then received his Right to Sue letter from the EEOC in the past 90 days.

## FACTUAL ALLEGATIONS

11. Plaintiff incorporates by reference the foregoing paragraphs.

12. Plaintiff Casares was employed by Defendant from May 1, 2023 until his termination effective May 16, 2025.

13. Plaintiff was a valued employee and received two promotions during his employment.

14. Plaintiff was most recently employed by Defendant as a Field Marketing Manager.

15. In May 2024, Plaintiff's irritable bowel syndrome ("IBS") worsened, requiring the care of a specialist.

16. Mr. Casares initially requested FMLA leave via email to the Company's HR Director, Cassandra Simmons, and HR Business Partner, Sarina Jackson, on May 9, 2024. Mr. Casares's email stated in part:

3

> I am writing to inform you of a recent health issue that requires immediate and comprehensive medical attention. Following consultations with my primary care physician, I have been advised not to return to work until I have seen a gastrointestinal specialist. Attached to this email, you will find a note from my doctor reflecting this medical advice.
>
> Given the circumstances, I would like to formally request a medical leave of absence starting immediately. I anticipate that I will be able to provide a more specific timeline for my expected return to work date once I have consulted with the specialist.
>
> Please let me know the next steps and any additional documentation you might need from me to facilitate this process. I am committed to keeping you informed and ensuring a smooth transition during my absence.

17. Ms. Simmons initially acknowledged Mr. Casares's May 9, 2024 email and stated "[t]hank you, I will review and provide you with the additional information shortly." However, Mr. Casares never received any FMLA paperwork to initiate the leave process nor did the Company provide Mr. Casares with any determination regarding his leave request.

18. On May 16, 2024, Plaintiff became aware that Defendant posted his position on recruitment websites.

19. The same day, on May 16, 2024, Plaintiff emailed Chief Revenue Officer Greg Cosby and stated the following:

> I hope this message finds you well. I am writing to seek your assistance with a matter that has significant implications for my professional and personal well-being.

4

> On May 9, I submitted a medical leave request and have provided all required medical documentation. I understand that these processes can take time, however, I am yet to receive a formal acknowledgement or approval of my leave. Additionally, I noticed that a job listing for my position has been posted. My supervisor has reassured me that my job is secure, yet I seek a clearer understanding of our team's growth strategy and how it pertains to my role.
>
> Given these circumstances, I respectfully request your assistance to obtain a clear and written confirmation on the following:
>
> 1. The status of my medical leave request.
>
> 2. The rationale behind the job listing for my position, specifically why there appears to be hiring for two people in the same role as my current position. I am seeking a detailed explanation to understand the strategic decision being made that [affects] my position.
>
> 3. Assurance of my job security during and after my leave period.
>
> It is important for me to receive this information so that I can effectively plan my future steps, both health-wise and professionally. Your prompt attention to this matter would be greatly appreciated.

20. Ms. Simmons responded to Plaintiff's email stating that his doctor's note was "insufficient." Ms. Simmons further stated that Plaintiff's concern regarding the posting of his position was "incorrect."

21. Ms. Simmons did not provide Plaintiff with information to advance the FMLA process.

22. HR Business Partner Sarina Jackson also responded to Plaintiff's May 16, 2024 email by retroactively placing Plaintiff on an unofficial leave of absence as of May 9, 2024.

23. Subsequently, Mr. Crosby responded to Plaintiff's May 16, 2024 email denying the assertion that Defendant was seeking to replace Plaintiff.

24. However, on the evening May 16, 2024, Plaintiff's manager, William McFarlin, informed Plaintiff that Defendant has approved the job posting and had already begun interviewing candidates.

25. These candidates were being interviewed specifically for Plaintiff's role.

26. The job posting notably included specified physical demands and the requirement that candidates "must be in good health."

27. On May 16, 2024, after Mr. Casares followed up with Ms. Simmons, Ms. Simmons sent Mr. Casares an email stating in part "your paperwork is forthcoming.  I have placed you on a leave of absence and the paperwork will explain what else is needed."

28. On May 17, 2024, Plaintiff informed Ms. Simmons that he would return to work on May 20, 2024.

29. Ms. Simmons responded by informing Mr. Casares that he could only return to work with a full-duty release from his doctor that stated that Mr. Casares

6

could work without restrictions.

30. However, at this point, Mr. Casares had not been able to see his GI specialist as originally requested by his PCP.

31. Due to the pressure from the Company's Human Resources department to return to work without restrictions and Mr. Casares's sense of job insecurity due to the Company posting his position, Mr. Casares convinced his doctor to clear him to return to work without restrictions.

32. Mr. Casares ultimately returned to work on May 20 never having received a formal decision on his request for FMLA leave.

33. Between May and July 2024, Mr. Casares repeatedly requested FMLA leave to treat his worsening IBS condition.

34. Mr. Casares submitted his FMLA forms multiple times to the Company's HR department including on July 12, 2024 and July 18, 2024.

35. But Defendant's HR rejected Mr. Casares's FMLA paperwork each time due to alleged "errors" and "omissions" by Mr. Casares's doctor.

36. Ms. Simmons also informed Mr. Casares that HR could not help Mr. Casares at all with his FMLA request and left it up to Mr. Casares and his doctor to submit paperwork so that the Company could determine whether it was sufficient without any instruction or guidance.

37.     Even though Defendant clearly knew that Mr. Casares was attempting to request FMLA leave, the Company never provided him with any clear instructions, any written FMLA designation, or any intent to initiate the ADA's mandatory interactive process.

38.     On July 24, 2024, Mr. Casares requested a final follow-up from Ms. Simmons and Benjamin Buckles via email:

> I have sent the updated FMLA paperwork on the 12th and 18th of this month. This is my third attempt to reach the HR department, and it has been 12 days since I initially submitted the updated documents.
>
> Could you please confirm receipt and provide an update on the status of my FMLA request?

39.     Mr. Casares received no response to his July 24, 2024 email and never received any confirmation that his FMLA request was granted or denied.

40.     Around the same time and through the end of 2024, the Company continued to post Plaintiff's job on recruitment websites.

41.     The description of Mr. Casares's job now required that candidates be "in good health."

42.     Throughout late 2024, Mr. Casares repeatedly witnessed the Company's leadership interviewing candidates for Mr. Casares's position while he was in the office.

43. This environment created by the Company along with the Company's refusal to take Mr. Casares's FMLA requests seriously left him with no choice but to submit a 45-day notice.

44. On May 15, 2025, Plaintiff submitted a 45-day resignation notice. On May 16, 2025, Defendant terminated Mr. Casares.

45. Plaintiff engaged in protected activity when he informed Defendant of his disability and requested FMLA leave.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION–FAILURE TO ACCOMMODATE

46. Plaintiff restates the foregoing paragraphs as set forth fully herein.

47. Plaintiff has a "disability" as defined 42 U.S.C. § 12102(1).

48. Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

49. Defendant was legally required to engage Plaintiff in the interactive process before terminating him.

50. Defendant discriminated against Plaintiff on account of his "actual or perceived disability when Defendant failed to accommodate Plaintiff and terminated him.

51. Defendant's actions were knowing and willful.

52. "Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. app. § 1630.9.

53. An employee begins the accommodation process by notifying [his] employer of [his] disability; "at that point, an employer's liability is triggered for failure to provide accommodations." *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998).

54. After an employee has disclosed that he has a disability, the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).

55. Rather than collaborate with Plaintiff or his doctor to find reasonable accommodation, Defendant chose to terminate Plaintiff.

56. The law requires an employer to seek an explanation from the doctor if it had concerns with the employee's medical diagnosis. *Bultemeyer v. Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1286 (7th Cir. 1996).

57. The employer's conduct is actionable "if it prevents identification of an appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013).

58. An employer fails to engage in good faith when "the interactive process . . . was still ongoing when the employer terminated the worker's employment." *Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 336 (6th Cir. 2013).

59. "An employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *King v. Steward Trumbull Meml. Hosp.*, Inc., 30 F.4th 551, 567 (6th Cir. 2022) (citing *Cutrera v. La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

60. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

61. Plaintiff was placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## <u>RETALIATION</u>

62. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

63. Plaintiff engaged in protected activity when he requested accommodation for his disability.

64. Plaintiff's exercise of his protected rights was known to Defendant.

65. In retaliation for submitting medical accommodation, Plaintiff was subjected to adverse employment action by Defendant.

66. Defendant's reasons for taking these actions were retaliatory and not legally justified.

67. As a direct and proximate result of Defendant's ADA violation, Plaintiff has suffered bodily injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

68. As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work and will so suffer in the future; he has been required to employ the

services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
## DISABILITY DISCRIMINATION
## PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA")

69. Plaintiff incorporates by reference the foregoing paragraphs.

70. Plaintiff has a "disability" within the meaning of MCL § 37.1103(d).

71. Plaintiff was regarded as having a disability under MCL § 37.1103(d)(iii).

72. Plaintiff requested leave on multiple occasions.

73. Defendant failed to continually engage Plaintiff in an interactive process.

74. Defendant was legally required to do so before terminating him.

75. Defendant discriminated against Plaintiff on account of his "actual or perceived" disability.

76. Defendant's actions were knowing and willful.

77. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

78. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

**COUNT IV**
**RETALIATION**
**PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA")**

79. Plaintiff incorporates by reference the foregoing paragraphs.

80. Plaintiff has a "disability" within the meaning of MCL § 37.1103(d).

81. Plaintiff was regarded as having a disability under MCL § 37.1103(d)(iii).

82. Plaintiff engaged in protected activity when he requested reasonable accommodation on multiple occasions.

83. Defendant retaliated against Plaintiff for requesting accommodation.

84. Defendant's actions were knowing and willful.

85. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of the violation.

86. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## COUNT V
## INTERFERENCE AND RETALIATION
## FAMILY AND MEDICAL LEAVE ACT OF 1993 ("FMLA")

87. Plaintiff incorporates by reference herein the foregoing paragraphs.

88. Plaintiff's condition qualifies as a "serious health condition" under the Family and Medical Leave Act of 1993 ("FMLA") because it has involved "continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

89. The U.S. Department of Labor ("DOL") regulations specifically prohibit an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempting to exercise" his or her rights under the Family and Medical Leave Act ("FMLA"). 29 C.F.R. § 825.220(c).

90. Plaintiff engaged in protected activity when he requested FMLA leave.

91. Defendant's actions were knowing and willful.

92. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and

embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of the violation.

93. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

A. Compensatory damages for monetary and non-monetary loss,

B. Exemplary, liquidated, and punitive damages;

C. Prejudgment interest;

D. Attorneys' fees and costs; and

E. Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

Dated:  October 15, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NASHON CASARES,

      Plaintiff,                        Case No.

v.                                        Hon.

MERCURY BROADBAND, LLC,

      Defendant.

---

Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Brendan@hurwitzlaw.com

---

**JURY DEMAND**

Plaintiff Nashon Casares, by and through his attorneys, HURWITZ LAW PLLC, hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                              Respectfully Submitted,
                                              HURWITZ LAW PLLC

                                              */s/ Noah S. Hurwitz*
                                              Noah S. Hurwitz (P74063)

Dated: October 15, 2025